Tbe opinion of tbe Court was delivered by
Inglis, A. J.
Tbe defendant, Kinsman, by bis promissory note, to enforce tbe mortgage security for the payment of which note this suit has been brought, undertook to pay to the plaintiff on the 1st October, 1861, two thousand eight hundred and fifty dollars. “Dollar” has a known legal meaning ascertained by statute, as much so as any other word or form of expression designating or having reference to a standard of measurement prescribed and established by law. (Vide Hockin vs. Cooke, 4 Ter. Rep. 311.) It is a silver coin of a fixed weight and fineness, issued and made current by the authority of Congress, in the exercise of its constitutional power to that end. By the same authority other gold and silver coins are issued and made current, each as the legal equivalent of an ascertained number of dollars or fractions of a dollar, and made a legal tender in satisfaction of debts or obligations to pay any sum of money or any number of dollars. These coins constitute the lawful money of the country, and, at least, prima facie, the only lawful money. Performance of such an under *263 taking as the present can be effected in law only by the delivery and acceptance of the sum promised in such lawful money, unless the creditor shall consent to receive some substitute therefor. The State Government is expressly restrained from making any thing ejse than such gold and silver coins lawful money, and so a legal tender. If the Confederate government, which, for the time during which this contract was made and to be performed, occupied, at least, de facto, that relation to the State in this behalf which the Federal government of the United States previously had occupied and now does occupy, had the power to make any thing else than such coins “lawful money,” it did not do so, nor attempt it. The treasury notes, which from time to-time were issued by the authority of that government, were never made, nor were any of those issues made, a legal tender in payment of debts.
Undoubtedly the word “dollar" maybe used in a contract in a sense other than this, its statute definition, and effect will be given to it accordingly, if the intention to use it in such modified sense is so evidenced that the law can take cognizance of it. Qualifying or explanatory terms superadded in immediate connection or for the specific purpose in the contract, or other express terms and provisions therein, necessarily implying such intention, would be competent evidence for this purpose. But when the ' contract is reduced to writing and does not itself contain such evidence, it would be very difficult, if possible, in law, to show by parol that the term was used in some other than its technical sense, and that the intention of the parties was other than what that sense of the term imports. (Tide 1 Greenl. Ev., sec. 280, at end of the section.) Certainly párol evidence could not be heard, detailing the declarations of the parties themselves contemporaneous or otherwise, for this purpose. Whether such evidence might be heard disclosing extrinsic facts constituting the situation or “ sur *264 roundings” of the parties at the time of contracting, calculated to induce a conviction that such special sense must have been intended, it is not necessary now to decide. Eor if it were conceded that a departure, in the intention of the parties, from the strict legal meaning of the word “ dollar” could thus be shown, the present defendant could take nothing by the concession, since he has not, either in this or any other mode of proof, in the judgment of this Court, demonstrated such departure.
He alleges that his promise to pay “ two thousand eight hundred and fifty dollars” was intended and understood by the plaintiff and himself, as a promise to pay Confederate treasury notes to that amount, according to their nominal value. The intention and understanding are to be inferred, he says, from the surroundings of the parties at the time of the contract. There was then in actual use no currency other than these treasury notes; they constituted the only medium of exchange in the use of which the internal commerce of the country was carried on, the only standard of values; the-value put upon the plaintiff’s property, sold to the defendant, was estimated with reference to this standard; payment of the cash portion of the purchase-money, of the earlier to mature of the two promissory notes given to secure the credit portion, and of a considerable part of the second note, was actually accepted in such currency.
The value of these treasury notes, like that of all mere paper substitutes for money, compared with coin, was necessarily unstable. Besides this common infirmity, they had the further peculiar defect that they were redeemable only on a contingency, and at a future day thereafter. The evidence ought to be very clear and urgent that would induce the belief that a party intended to bind himself to accept such a currency in payment for his property sold upon a credit of one and two years. That the price at *265 which this property was sold was, to some extent, enhanced by the depreciation of this currency, is not only probable, but almost certain, but to what extent is not by any means so manifest. Wherever bank notes or other such paper substitutes for money constitute practically the currency of a country, by means of which its exchanges are in fact effected, the prices of commodities will necessarily be more or less influenced by the comparative value of such currency, as affected by expansion or contraction, by the greater or less prevalence of confidence or distrust in the solvency of the banks, etc., issuing such notes or otherwise. The argument would go to the length of maintaining that, in all such cases, the agreement of the parties to a contract for the payment of money, must be understood to be for payment in such currency, and that the creditor is in law bound to receive the same in satisfaction, without reference to its subsequent depreciation. To give the effect, which the defendant’s argument claims for them, to such circumstances, would work great injustice to individuals, and practically nullify the laws of legal, tender.
A 'creditor, though entitled to demand payment in lawful money, may waive his right, and accept any substitute he pleases, and his voluntary acceptance of such substitute as payment makes it so. When the paper substitute for money, circulating in a commercial country, is not materially depreciated, it will, for convenience and out of a spirit of accommodation, be almost universally so accepted. But such acceptance cannot justify an inference, that the party intended to bind himself originally, that the engagement to him might be so satisfied. Experience, which teaches that in this matter men do not generally exact their strict legal rights, contradicts such an inference. The fact that a creditor has consented to receive such substitute for money, in payment of part of his demand, cannot warrant a judgment that he shall receive the residue in the *266 same form. The affirmation, by the Court, of such a proposition as this argument involves, would not only, like the former, contribute largely to the practical nullification of the laws of legal tender, but, in its working, be most unfortunate for debtors. Payment in gold and silver, or other legal tender, if other there be, would then always be insisted on where it was only in part satisfaction of the demand.
The circumstances relied on by the defendant, as evincing that it was the intention of the parties to this undertaking that it should be satisfied by payment of the sum stipulated, in Confederate treasury notes, are not sufficient, in the judgment of this Court, to induce the belief of such intention, and there is, therefore, no such error inr the circuit decree as the defendant’s appeal assigns.
The plaintiff was, then, not bound in law to accept any thing in satisfaction, wholly or in part, of the defendant’s engagement, other than lawful money, or what, -by competent authority, had been duly constituted a legal tender. If, however, he has voluntarily accepted as payment any substitute for such lawful money, to whatever extent he has done so, his acceptance makes it payment in law. Here the whole sum due under the original contract of the parties, except eighteen hundred and fifty dollars, with the interest accrued thereon, according to the tenor of the second note, was, in several parcels, paid in Confederate treasury notes, which the plaintiff voluntarily, without any compulsion of law, accepted as so much money. The great depreciation of such notes, in the intervals between the date of the contract and the respective dates of the two subsequent payments, constituted a very sufficient reason why neither fairness towards the defendant, nor patriotism towards the Government that issued them, required the plaintiff to receive them as money. He, however, chose so to take them, and to that extent, therefore, in law, the debt is paid. *267 The agreement between the parties is, and, before the date of the ordinance of-the Convention, was,-thus far, executed by the defendant, as it had in the beginning been in full by the plaintiff. 'All that was wanting to -its complete and final execution, was the payment of the balance of eighteen hundred and fifty dollars, and to this extent it was still executory.
The Convention did not-design-to go back through all the transactions of the period covered .by the terms of its ordinance, and undo such of them as the parties had consummated. Only so far as agreements yet remained executory, and could be the subject of “ actions” to enforce them — because, so far only in such still uncompleted contracts as execution remained to be done, it 'must be, under circumstances widely changed from those under which they were made — did the Convention propose to interfere. Its ordinance does not.authorize any disturbance or reopening of so much'*of the contract as had been performed.
The plaintiff’s bill, admitting the payment of the whole debt, except a balance of eighteen hundred and fifty dollars, seeks to compel the payment of this balance only, and, for the insuring of this alone, asks that the specific lien of the mortgage may be enforced. Under the terms of the ordinance the defendant is entitled to the inquiry, whether, in order to "effect substantial justice between the .parties,” it is not necessary that less than eighteen hundred and fifty dollars in lawful money shall be accepted -by- the plaintiff. in satisfaction of this balance, and, that this inquiry may be rightly determined, to “ introduce, testimony showing the true value and real character of the consideration.” ' Prices were undoubtedly, and beyond the control and often against the purpose and desire of parties, so largely affected by the abnormal and extraordinary condition of the practical currency, during the period embraced within the terms of the ordinance, that the enforcement of *268 contracts then made according to tbe literal import of tbeir terms, though but for tbis ordinance strict law might perhaps have so required, would' bave be^n in a high degree inequitable and against conscience. Tbe proper mode of applying tbe relief intended by tbe ordinance, to tbe present case, is indicated by tbe judgment below. ■ What sum in lawful money will, under tbe particular circumstances of tbe case, be a just representative of tbe value, falsely expressed by tbe exaggerated price named in tbe contract, is tbe first inquiry to be solved. When tbis shall bave been ascertained, then a sum, bearing tbe same proportion to that so ascertained as tbis nominal balance of eighteen hundred and fifty dollars bears to tbe whole nominal price of seven thousand seven hundred dollars, will be the quantity sought, and will correctly express tbe sum which, with interest from tbe day from which tbe eighteen hundred and fifty dollars would, by tbe terms of tbe second note bear interest, tbe plaintiff is entitled" to recover. Eor tbe satisfaction of tbis recovery be is further entitled to an order for tbe sale of tbe mortgaged premises, and consequent foreclosure of tbe mortgage.
Tbe circuit decree exactly conformed to tbis view, and, being, therefore, not liable to tbe plaintiff’s exceptions, is affirmed.
Tbe appeals are dismissed.
Dunkin, Oh. J., and Wabdlaw, A. J., concurred.

Decree affirmed.